John Henry **NUNLEY**, Plaintiff-in-Error,

v.

**STATE** of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

Feb. 10, 1972.

Certiorari Denied by Supreme Court
April 3, 1972.

Jerome C. Ables, South Pittsburg, for plaintiff in error.

David M. Pack, Atty. Gen., Weldon B. White, Jr., Asst. Atty. Gen., Nashville, J. William Pope, Jr., Dist. Atty. Gen., Pikeville, Mike P. Lynch, Asst. Dist. Atty. Gen., Winchester, for defendant in error.

## OPINION

DWYER, Judge.

From a jury's verdict with judgment entered thereon finding John Henry Nunley guilty of concealing stolen property under the value of one hundred dollars, with resulting confinement for not less than one year nor more than one year and a day, this appeal is perfected.

On Friday, April 10, 1970, a crew engaged in strip mining for the L. P. Phipps and Sons, Inc. corporation in Coalmont left their work at 3:30 p. m. The following morning, Saturday, upon reporting to work Dale Phipps discovered welding equipment used in their work was missing. A complaint made to the sheriff resulted in the arrest of Nunley and a cohort a few hours after receipt of the theft report. The record reflects that the sheriff had information that Nunley and another were at a body and garage shop in Gruetli the same Saturday trying to sell torches, hoses and gauges for welding equipment. A short time after receiving this information the sheriff stopped Nunley in his car and arrested him and his companion. At the time of arrest he noticed and recovered two pressure gauges which contained four dials, two dials that show the amount of acetylene and oxygen pressure in the tanks and two others that show the acetylene and oxygen pressure at the torch. These gauges were in plain view on the floorboard of the front seat of Nunley's car under the feet of his companion. The sheriff recovered other parts of the missing equipment found some fifty feet outside the fence of Nunley's property.

The gauges and other equipment were identified by the welder and owner as part of the missing property.

The defendant contends the evidence is insufficient in that no proof, other

than leading questions, established that there was a theft. In our review of this record we note that there was no objection made to several of these questions containing the references to the property as being stolen. We further feel from our review that the element of theft was established. The owner on cross examination by defense, related the property was stolen on Friday night, and was reported as missing on Saturday morning. Defendant further reasons that there is an insufficiency in that there was no proof that he concealed the property knowing it to have been stolen. The record reveals that the two gauges were found in defendant's car within hours after they were reported missing, and that also within hours defendant was trying to sell the missing equipment. Defendant did not testify. We feel that there is a sufficiency of the proof that the State made out a prima facie case, from the above related factual situation found in this record. Under the rule enunciated in Tackett v. State, 223 Tenn. 176, 443 S.W. 2d 450, an inference arises from the unexplained possession of stolen property shortly after the property was discovered and reported missing. When this possession is, as here, unexplained, a jury is authorized to infer the knowledge of the possessor that the goods were stolen, and to return a verdict of guilty of concealing stolen property. It is also noted that the jury returned a verdict of concealing stolen property of the value of less than $100, on an indictment charging a value over $100. The two pressure gauges found in defendant's car, in his possession and control, shortly after being discovered missing, and identified as part of the missing equipment by the owner, are sufficient property value and circumstances to support this verdict. See also Thomas v. State, Tenn., 463 S.W. 2d 687, 688. The defendant has not carried the burden to show that the proof preponderates against his guilt and in favor of his innocence. See Haas v. State, Tenn.Cr.App., 455 S.W.2d 634. The assignment is accordingly overruled.

Defendant next contends the sheriff did not advise him of his rights at the time of arrest. In other words, he claims a non-compliance with the tenets of *Miranda*. We note first that defendant did not make any statement. We further note that in an out of the presence of the jury hearing, in which the sheriff testified, the trial court found that the sheriff had properly advised the defendant in accordance with *Miranda*, in that he had used a card on which the complete *Miranda* warnings were printed. This finding by the trial court is given the weight of a jury verdict. See Taylor v. State, 180 Tenn. 62, 171 S. W.2d 403. We do not find the evidence, from our review of this record to preponderate against his ruling. The assignment is overruled.

Defendant lastly maintains that a statement of co-defendant out of his presence telling the sheriff where they found the missing equipment was a violation of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. He reasons that this statement made out of his presence deprived him of the right to cross examine co-defendant, who did not testify. We find in the record that the trail court instructed the jury that the exculpatory statement of the co-defendant could not be considered against the defendant. Furthermore, defendant did not object and did not assign this ground in his motion for a new trial. It will not be considered here. See Rule 14(4), (5) of the Rules of the Supreme Court, duly adopted by order as the rules of this court. Also see State ex rel. Carroll v. Henderson, Tenn.Cr.App., 443 S.W.2d 689, 691, 692. The assignment is overruled.

In conclusion, we are aware of the able and learned dissenting opinion filed by Judge Oliver in this record and we will comment thereon.

In the first instance, no objection nor exception was taken to the verdict as returned by counsel. Hence, the trial judge

did not have the matter called to his attention and given the opportunity to correct.

■ In the second instance, the unfortunate use of the ward "larceny" should not invalidate this judgment. The word larceny entered into the proceedings when the court charged the concluding proviso found in T.C.A. 39–4218, ". . . Provided further, that no person shall be convicted of more than the one (1) offense of *larceny.*" (Emphasis added.) To remand this, as we view the event, would be hyper-technical and not in the spirit of the law. In other words, this would be an idle waste of the taxpayers' money. See State v. Veach, Tenn., 456 S.W.2d 650, 652.

We feel that justice has been fairly meted out to this defendant by our majority opinion and therefore no due process of law is involved.

In the third instance, our Supreme Court in an unreported per curiam opinion styled Jacobs et al. v. State, released February 16, 1971, adopted in toto the dissenting opinions of Presiding Judge Walker in reversing the remand of that case by the majority opinion of this court. The reversal by the majority opinion of this court was predicated as here on an unassigned error.

In Presiding Judge Walker's adopted opinion by our Supreme Court the following language may be found:

"In Silber v. United States, 370 U.S. 717, 8 L.Ed.2d 798, 82 S.Ct. 1287 (1962), the court said:

'In exceptional circumstances, especially in criminal cases, appellate courts, *in the public interest,* may, of their own motion, notice errors to which no exception has been taken, *if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.*' (Emphasis added.)

"In the normal run of appellate cases, of which I think this is one, an appellate court should not consider questions other than those presented to it by the parties. Silber v. United States, supra; United States v. Atkieson, 297 U.S. 157, 80 L. Ed. 555, 56 S.C.T. 391."

Was this error obvious? We think not. Does it seriously affect the fairness of the proceedings? No. Will it affect the integrity or public reputation of judicial proceedings? We seriously doubt it.

The judgment of the trial court is affirmed.

WALKER, P. J., concurs.

OLIVER, J., dissents.

OLIVER, Judge (dissenting).

Contrary to the majority opinion, the defendant was not convicted of concealing stolen property, the offense charged in the indictment.

The Bill of Exceptions shows that when the jury reported to the court that they had reached a verdict, and the court asked, "What is that verdict?" the jury foreman reported the verdict as follows:

"We find both defendants guilty, I guess it would be petty larceny less than One Hundred Dollars and recommend the sentence to be one year and a day."

The Minute entry recording the trial states that the jury found the defendant "guilty of concealing stolen property under the value of $100.00 as charged in the indictment."

But the settled law of this State is that, in case of conflict between the Minutes and the Bill of Exceptions with reference to the verdict, the record recited in the Bill of Exceptions is controlling. Church v. State, 206 Tenn. 336, 333 S.W.2d 799; Helton v. State, 195 Tenn. 36, 255 S.W.2d 694.

This record clearly shows that the jury found the defendant guilty of petit larceny.

Without asking for any explanation by the jury, or attempting to obtain any clarification regarding the verdict announced by the jury foreman in open court, the trial judge simply proceeded to pronounce the sentence recommended by the jury.

The indictment did not charge the defendant with larceny. It expressly states that the property in question had been stolen by "some one to the Grand Jury unknown." Thus, the jury convicted the defendant of a crime not charged in the indictment, as shown by the verdict set out in the Bill of Exceptions, and its verdict was void. Church v. State, supra; Huffman v. State, 200 Tenn. 487, 292 S.W.2d 738; Judkins v. State, 224 Tenn. 587, 458 S.W.2d 801. Conviction upon a charge not made or without evidence of guilt is a plain denial of due process. Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654. The verdict being a nullity, "the court had no power to pronounce a judgment upon it." Mayfield v. State, 101 Tenn. 673, 49 S.W. 742.

For these reasons, in my judgment we have no choice but to reverse this case and remand it for a new trial.

. . . . . .

As is apparent, upon receipt of the foregoing the majority opinion was revised. Apparently the vital and determinative considerations in this case have eluded the majority.

Plainly, the jury convicted the defendant of larceny, a crime not charged in the indictment. Certainly it cannot be said the jury found him guilty of concealing stolen property; in returning the verdict the jury did not even mention that offense. Plainly, a verdict finding an accused guilty of a crime for which he was not indicted is void. "If it's void, it's void," as a law school professor was wont to say. "Criminal prosecutions cannot be sustained by intendment, but everything necessary to constitute the offense [of which the accused was found guilty] must be charged." Church v. State, supra.

Nothing is more firmly established in the law than that a defendant cannot be charged with one crime and convicted of another, Brown v. State, 162 Tenn. 639, 39 S.W.2d 746; 5 Wharton's Criminal Law & Procedure (Anderson), Variance § 2060, p. 207, and that it is an unconstitutional denial of due process to convict and punish a man without evidence of his guilt, Thompson v. City of Louisville, supra; Garner v. Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L. Ed.2d 207; Brown v. Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637, or upon a charge which was not made or on which he was not tried. Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644; Thompson v. City of Louisville, supra; 21 Am.Jur.2d., Criminal Law § 226.

There was not a scintilla of evidence this defendant was guilty of larceny and he was not so charged.

A void conviction cannot be ignored simply because neither the defendant nor his counsel noticed or questioned its invalidity, and consequently did not call it to the attention of the trial judge. That is precisely the reason appellate courts may and must notice and correct, *sua sponte,* patent errors which nullify convictions.

We are not relieved of our obligation by the fact that the defendant has raised no question concerning his conviction. When necessary to meet the ends of justice, an appellate court has the right to notice, and will notice and correct of its own motion, errors of the lower court which invalidated the judgment appealed from, although such errors were not raised below nor on appeal. First National Bank v. Russell, 124 Tenn. 618, 139 S.W. 734; Bryan v. Norfolk and Western Railway Company, 119 Tenn. 349, 104 S.W. 523; Lee v. State, 132 Tenn. 655, 179 S.W. 145; Medic Ambulance Service, Inc. v. McAdams, 216 Tenn. 304, 392 S.W.2d 103; Baldwin v. State, 213 Tenn. 49, 372 S.W.2d 188; James v. State, 215 Tenn. 221, 229, 385 S.W.2d 86, cert. den. 381 U.S. 941, 85 S.Ct. 1777, 14

L.Ed.2d 705; Davidson v. State, 223 Tenn. 193, 443 S.W.2d 457. See also: Carter v. Jett, 51 Tenn.App. 560, 370 S.W.2d 576; Bedford County v. Roseborough, 20 Tenn. App. 35, 95 S.W.2d 61.

The plain and unassailable reason for this rule is that this Court cannot knowingly approve and permit an invalid judgment to stand, notwithstanding the fatal defect be unnoticed or unrecognized by the defendant and his counsel. We may not close our eyes to patently vitiating errors and commit a person to prison upon a void conviction. To do so would be nothing less than knowingly perpetrating a palpable injustice.

In my view, the law clearly mandates exactly the opposite answers to the questions with which the majority opinion is concluded. Our duty is clear. Simple justice requires us to reverse and remand this case for a new trial.