## MEMPHIS COLD STORAGE WAREHOUSE CO. v. ROBERT E. WOODSON, et al.

Western Section.    November 30, 1925.

No petition for Certiorari was filed.

1. **Interpleader. Grounds for relief.**
   The general rule is that the persons seeking the aid of the Court by a bill of interpleader shall be a mere stake holder and not claiming any interest in the subject-matter.

2. **Interpleader. Warehouseman does not have to waive claim for storage to be able to interplead.**
   A proper construction of Section 3608a17, Shannon's Code does not contemplate that before the warehouseman may require claimants to interplead that the warehouseman must waive all claim for storage against the property.

3. **Practice. Exception to an interlocutory decree should be made at the time the decree is made.**
   It is a well-settled rule of practice that the exception to an interlocutory decree or order should be made at the time the decree or order is made in the cause and that the taking of the exception to the interlocutory decree or order can not be deferred until the final decree in the case and then taken for the first time.

4. **Appeal and error. Ruling on interlocutory decree not saved for review unless exceptions are made at the time.**
   Where exception to interlocutory decree overruling demurrer was not made until final decree in case held question not saved for review.

5. **Interpleader. Attorney's fees. Fees of $500 allowed attorneys of interpleader held proper.**
   It was held however that they were not entitled to an additional fee for services in the appellate court.

Appeal from Chancery Court, Shelby County; Hon. I. H. Peres, Chancellor.

Affirmed.

Lowell W. Taylor, of Memphis, for appellant.

W. C. Rodgers, of Memphis, for appellee.

SENTER, J.  The original bill was filed in this cause as a bill of interpleader.   The Memphis Cold Storage Warehouse Company received for storage a quantity of pecans, about 69,000 pounds, and issued its warehouse receipt to defendant, Robert E. Woodson. The pecans were stored on June 10, 1924, and warehouse receipt issued on that date to R. E. Woodson.  On July 15, 1924, R. E. Woodson advised the Memphis Cold Storage Warehouse Company by letter that the two carloads of pecans had been sold to the Texas Pecan Shelling Company and further advising that he was holding the warehouse receipt as collateral on a loan and would see that the storage was paid, but requested that the storage be collected from the Texas Pecan Shelling Company.

On August 23, 1924, defendant R. E. Woodson advised the complainants the Memphis Cold Storage Warehouse Company, by letter that he had sold 30,000 pounds of the pecans, and desired to exchange the warehouse receipt so as to separate it into two receipts, and that two warehouse receipts would be issued, one for the 30,000 lbs. and the other for the balance.   The complainant declined to assume the responsibility for separating the pecans according to grade and on August 26, 1924, was advised by defendant Woodson that defendant Pearlman would be in Memphis to take out the 30,000 lbs. of the pecans, and directed that they be loaded out "just as you come to them."

On August 28, 1924, the defendant, Texas Pecan Shelling Company, wrote complainant as follows:

"There seems to be controversy arising over the two car of Arkansas Pecans that we bought from R. E. Woodson that we have stored with you.

"Make no transfer whatever on these goods until further notice from us.  These goods should be in our name and if they are not there is some mistake or a case of misrepresentation on the part of Mr. Woodson.  Advice us fully on this immediately.

"Trusting that you will give this matter your immediate attention, we are," etc.

A few days thereafter the defendant, Pearlman, came to Memphis on the 2nd day of September and demanded of the complainant a delivery of the pecans.  On that date the complainant consulted with its attorney in Memphis as to what course should be taken

in view of the respective claims being made by Pearlman and the Texas Pecan Shelling Company.

On the next day it seems that defendant, Woodson, came to Memphis from St. Louis and in company with his attorney demanded that the pecans be turned over to Pearlman. The attorney for the complainant advised the complainant to file the bill of interpleader, and the bill for interpleader was accordingly filed on September 3, 1924, and process served on September 3, 1924, on defendants R. E. Woodson and A. Pearlman, by the Sheriff of Shelby county, Tennessee. Publication was made for defendant, the Texas Pecan Shelling Company. It seems that on the day following the filing of the bill defendant,. Texas Pecan Shelling Company sent a telegram to the Memphis Cold Storage Warehouse Company as follows:

"This authorizes you to deliver our two cars of pecans to R. E. Woodson. Collect storage charges from R.| E. Woodson". Signed "Texas Pecan Shelling Company."

Upon the receipt of this telegram, it appears that the attorneys representing all parties to the controversy went before the chancellor and presented the telegram, and the court directed that the pecans be delivered according to the direction in the telegram but required the defendants to execute indemnity bond to protect the Memphis Cold Storage Warehouse Company and to cover costs, expenses and attorney's fees. The bill was not dismissed.

An order pro confesso was taken against all the defendants. After the order pro confesso had been taken against the defendants, the chancellor, on written motion of defendants set aside the order pro confesso and permitted the filing of a demurrer. On the hearing of the demurrer it was overruled and disallowed by the court. Prior to the filing of the demurrer and the motion to set aside the order pro confesso previously taken in the cause, a decree had been entered sustaining the bill as a bill of interpleader. The decree was amended by the chancellor so as to strike out so much of the decree as sustained the bill as a bill of interpleader. The defendants then answered the bill. The court, upon the hearing of the cause, again sustained the bill as a bill of interpleader by an interlocutory decree, and in the same interlocutory decree ordered a reference to the master on the question of the attorney's fees to be allowed and paid to the solicitor of complainant by defendants.

It appears that no exception was taken to this interlocutory decree at the time the interlocutory decree was entered sustaining the bill as a bill of interpleader and making the order of reference as to solicitor's fees for complainant. The clerk and master proceeded to take proof on the order of reference as to compensation to be allowed and paid to solicitors for complainant. The clerk and

master reported the fee of $250 to Taylor & Goodman, as solicitors for complainant. Both parties excepted to the report of the clerk and master before the chancellor, and upon a consideration of the whole record, the chancellor overruled the exception of defendants and sustained the exception of complainants and fixed the solicitor's fees for complainant at $500. To this action of the court the defendants excepted, and then for the first time excepted to the action of the court in sustaining the bill as a bill of interpleader and ordering the reference to the clerk and master for fixing solicitor's compensation, and prayed an appeal to this court.

The chancellor declined to grant the appeal from any action of the court on the interlocutory decrees in the cause, and limited the appeal to the action of the court in decreeing the solicitor's fees for complainants at $500. The case is now before this court on the appeal and on a writ of error. The appeal and writ of error seeking to have this court review the whole proceedings. Errors have been assigned by defendants to the action of the court.

The first assignment of error is directed to the action of the court in overruling defendants demurrer, because:

    (a)   Complainant was the agent of Robert E. Woodson, and by the issuance of its receipts, placed itself under special liability to him.

    (b)   Complainant had a substantial claim of lien on the pecans for storage charges.

    (c)   The Texas Pecan Shelling Company was a mere stranger.

The second assignment of error goes to the action of the court in finding that the complainant was entitled to have the bill sustained as a bill of interpleader, "Because the record shows the suit was instituted in bad faith and only for the purpose of forcing defendants to pay, or enable complainant's solicitors to collect from them, wrongfully, an improper demand or fee."

The third assignment of error goes to the action of the court in finding that defendant R. E. Woodson, was the agent of the Texas Pecan Shelling Company, and by reason of this fact could not be forced to interplead.

The fourth assignment of error goes to the action of the court in finding complainant's solicitor entitled to any fee, or in sustaining any part of complainant's exceptions to the master's report.

The fifth assignment of error is directed to the action of the court in limiting defendant's appeal to the final decree on the reference or report of the master.

The defendants in the brief filed in this case in this court do not insist upon the first grounds of demurrer to the effect that complainant, was the agent of R. E. Woodson and by the terms of its receipt, was under special liability to him. It being conceded that Section

3608a17, Shannon's Code, makes an exception to the general rule that an agent cannot interplead its principle so far as warehousemen are concerned.

The second ground of the demurrer is based upon an alleged claim or interest which the complainant had in the subject-matter by reason of having his claim for storage charges.

The third ground of the demurrer contends that under the bill the Texas Pecan Shelling Company was a mere stranger.

It will be observed that the defendants did not except to the decree of the chancellor in overruling and disallowing the demurrer. This was an interlocutory decree, and no exception was taken or preserved until the final decree in the cause.

We do not think under the record that the court erred in overruling and disallowing the demurrer, as it is conceded in the brief and argument that the first ground of the demurrer was not well taken, in that, it comes within the exception to the general rule under Section 3608a17, Shannon's Code.

The second ground of the demurrer to the effect that the complainant had substantial claim or interest in these pecans in the form of accured charges for storage is not well taken because:

(a) The bill, while referring to the storage charges, does not set up any claim against the pecans for storage, nor does the prayer of the bill seek to have the pecans subjected to the storage charges.

(b) The bill does not seek to enforce any lien that it may have had on the pecans to cover storage charges.

(c) The answer of the defendant admits that at the time of the filing of the bill there was due to complainant the storage charges on these pecans and that storage charges would continue to accrue.

It is true that the general rule is that the person seeking the aid of the court by a bill of interpleader shall be a mere stakeholder and not claiming any interest in the subject-matter. It is also true that a bill of interpleader proceeds on the assumption that the person seeking to sustain the bill as an interpleader is the mere holder of the stake which is contested, and the complainant seeks the aid of the court in determining to whom the property or money should be paid, and to the end that their respective rights may be settled, and the person in possession, claiming no interest in the property, but is the mere holder of the property.

We do not think this case comes within the general rule as above set forth. In the first place the orginal bill does not seek to set up a claim against the pecans by way of lien or otherwise, nor does it seek to enforce a lien for storage charges. In the second place the right of complainant to its storage charges on these pecans is specifically admitted in the answer of defendants.

In 33 Corpus Juris, 437, it is said:

"The interest in the subject-matter which will be sufficient to deny plaintiff the right to bring a strict bill of interpleader must be a substantially contested right, and must be in the very thing or fund itself which is the subject-matter of the suit . . . while the assertion of a charge, lien or claim upon the very thing or fund itself, which is admitted by the claimants to be valid may not defeat interpleader, such a claim disputed by the claimants of the fund, is such an interest as bars the right to the remedy."

We think a proper construction of Section 3608a17 of Shannon's Code does not contemplate that before the warehousemen may require claimants to interplead, that the warehousemen would have to waive all claim for storage against the property. The section of the Code referred to is in the following language:

"If more than one person claim the title or possession of the goods, the warehouseman may, either as a defense to an action brought against him for non-delivery of the goods, or as an original suit, whichever is appropriate, require all known claimants to interplead."

Whatever the general rule on this subject may be, we think that where the answer admits the warehouseman is entitled to collect storage charges on the property stored, and also by a fair interpretation of the section of Shannon's Code above quoted, the warehouseman it not denied the right to file a bill of interpleader to have it determined by the court which of the parties claiming the property is entitled to receive it. Especially is this true where the warehouseman does not seek by the prayer of the bill to enforce the lien, or to charge the property with the lien.

As to the third ground of the demurrer, to the effect that the Texas Pecan Shelling Company occupied the status of a stranger, making no claim to the property, there is nothing in the bill that would warrant that assumption. It is apparent from the record that as late as August 28, 1924, only a few days before the other defendants were claiming the right to remove these pecans from the warehouse, that the Texas Pecan Shelling Company advised complainant by letter of its claim to the property and forbidding the removal of the property from the warehouse. So far as complainant knew that was the attitude of the Texas Pecan Shelling Company at the time the bill was filed.

However, as above stated, the defendants did not except to the action of the court in overruling the demurrer at the time that action was taken, nor did they except to the interlocutory decree overruling the demurrer. We think that the exceptions to the interlocutory decree or order should be made at the time that the action is taken, or the interlocutory decree pronounced. We think

it a well-settled rule of practice that the exception to an interlocutory decree or order should be made at the time the decree or order is made in the cause, and that the taking of exceptions to the interlocutory decree or order cannot be deferred until the final decree in the case and then taken for the first time.

In 3 Corpus Juris, 903, the rule is stated:

"It is a general rule that rulings made in respect to pleadings or the filing thereof, will not be reviewed unless duly excepted to, unless they are within a statute declaring exceptions unnecessary, or unless the question is as to the sufficiency of the pleading to state a cause of action or defense, or is otherwise one which is apparent on the record and which may therefore be raised for the first time on appeal."

In Section 805, 3 C. J., it is said:

"In the application of this rule it is held that a ruling on a demurrer or exception to a pleading will not be reviewed on appeal in the absence of an exception thereto."

Many cases and authorities could be cited in support of this rule of procedure and practice. Hawkins v. Hubbell, 127 Tenn., 312; Allen v. Shanks, 90 Tenn., 359; Hawkins v. Studdard, 132 Ga., 265; 131 Am. St Rep., 190; Warner v. Trustees, etc. (Iowa), 112 N. W., 176.

We are of the opinion that there was no error in overruling and disallowing the demurrer; nor do we think the court was in error in sustaining the bill as a bill of interpleader under the facts and circumstances appearing from the record. This leaves as the only other question to be disposed of the matter of the exceptions to the action of the court in allowing solicitor's fee for complainant, and in fixing the amount at $500.

It is insisted with much earnestness by defendants that this litigation was unnecessary and that the whole matter could have been disposed of by dismissal of the bill by complainant upon the receipt of the telegram authorizing the pecans to be turned over to defendant Woodson, and that had that course been taken the major portion of the services rendered in the case would have been unnecessary.

This would not have true, had it not been for the action and the attitude of the defendants, who contested the right of complainant to have the bill sustained as a bill of interpleader, or to have any amount allowed to complainant for solicitor's fees. The whole matter of what course should be taken after the telegram was received, and after the bill had been filed was referred to the chancellor and the order of reference was made to the clerk and master to take proof and report what fee should be allowed to complainant's solicitors. A demurrer was filed by the defendants,

and· also an answer, and both the demurrer and, the answer made. the direct attack upon the bill as a bill of interpleader, and the right of .complainant to have solicitor's fees of any amount adjudged against the defendants.

The clerk and master reported a fee of $250. The chancellor, ·on exceptions to the report by complainant, increased the allowance to $500. The evidence of disinterested and capable lawyers was to the effect that $750 to $1,000 would not be excessive.

As the bill was properly sustained as a bill of interpleader, we think it is well settled that the complainant filing the bill of interpleader is entitled to recover against the defendants reasonable solicitor's fees. It then becomes the duty of the chancellor to determine the amount of the fees. Under the record and under the proof taken by the clerk and master on the question as to what would be a reasonable attorney's fees, we are of the opinion that the fee fixed by the chancellor was not excessive. However, we are of the opinion that the fee of $500 allowed should cover all services rendered by solicitors for complainant in this cause, and that no additional fee should be allowed for services in this court. The motion filed by complainant for the allowance of additional solicitor's fees in this court is overruled.

All assignments of error are overruled and the decree of the chancellor is affirmed. The defendants and their sureties on their appeal bond will pay the cost of this appeal, and for which execution may issue.

Heiskell and Owen, JJ., concur. ·